UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE EX PARTE APPLICATION OF DNG FZE FOR
AN ORDER TO OBTAIN DISCOVERY FOR USE
IN FOREIGN PROCEEDINGS PURSUANT TO
28 U.S.C. § 1782

23 Misc. 435 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On November 10, 2023, DNG FZE ("DNG"), an online retailer selling electronic goods,

filed an *ex parte* application with this Court seeking an order permitting discovery in connection

with an upcoming trial in Singapore under 28 U.S.C. § 1782. Dkt. 1 ("DNG Pet."). In the

Singapore action, DNG has sued 3PL, a wholly-owned and Singapore-based subsidiary of

PayPal Inc. ("PayPal"), on claims arising from 3PL's withholding of funds from DNG following

an alleged breach of PayPal's User Agreement and Acceptable Use Policy. *See id.* at 7. DNG

here seeks to depose Michael Mulanaphy, PayPal's senior manager of special investigations,

who will serve as a fact witness at the trial, which is scheduled to occur before the Singapore

High Court next month. Notably, as multiple letters submitted to this Court reflect, *see* Dkts.

16–20, DNG has already been furnished an affidavit from Mulanaphy detailing his direct trial

testimony, as Singapore trial procedure requires, *see* Dkt. 13 at 5 & n.2. With the § 1782

application, DNG seeks as well to depose Mulanaphy, to assist DNG in its trial preparation. *See*

Dkt. 15 at 4 ("DNG has made clear that it seeks to depose Mulanaphy—a central witness—as

part of its fact finding and discovery[.]").

On November 20, 2023, DNG served Mulanaphy with its application. Dkt. 7. On

November 27, 2023, this Court ordered DNG to serve PayPal as well, and set an expedited

briefing schedule.  Dkt. 8.  On December 11, 2023, PayPal and Mulanaphy filed a memorandum

of law in opposition to DNG's petition as well as a supporting declaration and exhibits.  Dkts.

13, 14 ("Teo Decl.").  On December 15, 2023, DNG filed a reply.  Dkt. 15.

## I.    Applicable Legal Standards

Section 1782 authorizes district courts to order discovery from third parties in the United

States for use in foreign proceedings.  In relevant part, it provides as follows:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation.  The order may be made
> pursuant to a letter rogatory issued, or request made, by a foreign or international
> tribunal or upon the application of any interested person . . . .  To the extent that the
> order does not prescribe otherwise, the testimony or statement shall be taken, and
> the document or other thing produced, in accordance with the Federal Rules of Civil
> Procedure.

28 U.S.C. § 1782(a).  The statute thus imposes three prerequisites to the issuance of a foreign

discovery order.  *See, e.g.*, *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

First, the target must "reside" or be "found" in this District.  Second, the evidence sought must

be "for use" in a foreign proceeding.  Third, the application must be made by a foreign tribunal

or "any interested person."

Once those prerequisites have been satisfied, a district court has "broad discretion over

the issuance of discovery orders pursuant to § 1782."  *In re Edelman*, 295 F.3d 171, 181 (2d Cir.

2002).  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court

set out four factors to guide district courts in exercising this discretion:

> (1) whether "the person from whom discovery is sought is a participant in the
> foreign proceeding," in which event "the need for § 1782(a) aid generally is not as
> apparent as it ordinarily is when evidence is sought from a nonparticipant in the
> matter arising abroad";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is "unduly intrusive or burdensome."

*In re del Valle Ruiz*, 939 F.3d 520, 533–34 (2d Cir. 2019) (quoting *Intel*, 542 U.S. at 264–65). These "factors are not to be applied mechanically," and a district court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

## II.    Discussion

PayPal and Mulanaphy (collectively, "PayPal") argue that DNG's petition fails to satisfy both the statutory factors and the discretionary *Intel* factors. The Court denies the application for two independent reasons. First, DNG's sole proposed use for the deposition it seeks, to assist it in trial preparation, is inadequate to justify an order under the "for use" requirement of Section 1782. Second, the *Intel* factors, considered together, support denying the application. In light of the time-sensitivity of DNG's application, the Court has resolved this application expeditiously.

### A. "For Use"

Under Section 1782, discovery sought is "for use" in a foreign proceeding when it will be "employed with some advantage or serve some use in the proceeding[.]" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). In applying this requirement, the Second Circuit has "focused . . . on the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). The petitioner thus must establish more than just the relevance of the information sought

to be obtained through foreign discovery; "[w]ithout some means of injecting the evidence into the proceeding, a § 1782 applicant cannot show that it has a role in the proceeding, such that it may 'use' the information[.]" *Certain Funds, Accts., and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015).

The burden of showing a use for this testimony in the Singapore proceeding is on DNG. *See In re Kolomoisky*, 19 Misc. 116, 2006 WL 2404332, at *3 (S.D.N.Y. Aug. 18, 2006) (burden of establishing § 1782 factors is on applicant). Here, DNG has repeatedly stated that its intended "use" for the proposed U.S. deposition of Mulanaphy would be to assist it in its trial preparation. *See* DNG Pet. at 10; Dkt. 15 at 4; Dkt. 19 at 2 ("Petitioner reiterates its position that a deposition of Mulanaphy would enable DNG to discovery further information in preparation for the trial[.]"). DNG does not argue that the deposition itself would be admissible in the Singapore trial. Nor does it argue that the deposition would be taken in the service of pretrial procedures authorized by Singapore law. On the contrary, although the Singapore courts have procedures for seeking foreign depositions, Teo Decl. ¶ 10 & Ex. E at 1, DNG has not pursued them.

To be sure, § 1782 does not require that the U.S. discovery be shown to be admissible before the foreign tribunal at trial or authorized by the procedures of that tribunal. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). But, as reflected above, the § 1782 applicant must establish a practical use in the foreign proceeding for the discovery it seeks. Here, DNG's petition and briefs do not do so as to the Mulanaphy deposition. These merely state that DNG is eager to "discover further information in preparation for the trial," Dkt. 18, and to "help [it] prepare its case and strategy for trial," Dkt. 4 ("Wright Decl.") ¶ 40. DNG has not cited case authority that a litigant's interest in acquiring more information from its adversary in advance of a foreign proceeding, without more, satisfies the "for use" requirement.

4

Therefore, although the burden to identify "some procedural mechanism" through which the applicant would use the requested discovery in connection with the foreign action is modest, DNG's generic recitations, which do not delineate a concrete plan to use the information it seeks, fail to carry it here. *KPMG*, 798 F.3d at 122 n.11 ("The district court's demand that the Funds identify some 'discernible procedural mechanism' for introducing the evidence they sought simply reflects the burden on a § 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding."); *see also, e.g., In re Asia Mar. P. Ltd.*, 253 F. Supp. 3d 701, 706–07 (S.D.N.Y. 2015) (discovery sought not "for use" in foreign proceeding when petitioner had not adequately explained how evidence would increase chances of success in that proceeding); *In re Escallon*, 323 F. Supp. 3d 552, 558–59 (S.D.N.Y. 2018) ("for use" requirement not satisfied where petitioner had not adequately explained how information sought would be used in proceeding at issue); *In re Postalis*, No. 18 Misc. 497 (JGK), 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018) (denying § 1782 application for failing to meet "for use" requirement).

**B.   *Intel* Factors**

Even if DNG's petition had met the § 1782 statutory requirements, the Court would still deny it, under the discretionary *Intel* factors, which all either disfavor granting the petition or are neutral.

**1.  Participants in the Foreign Proceeding**

The first *Intel* factor inquires whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce the evidence [sought]." *Id.* By contrast, "nonparticipants in the foreign proceeding may be outside the

foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Courts thus disfavor § 1782 petitions that "for all intents and purposes . . . seek[] discovery from . . . their opponent in the [foreign] litigation." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004).

Such is the case here. In seeking to depose Mulanaphy, an employee of PayPal, DNG, for all intents and purposes seeks discovery from its opponent in the Singapore litigation. DNG's counterarguments only lamely resist the point. DNG first argues that "participant" should be read to refer only to the formal parties named in the foreign proceeding as opposed to their employees and agents, then that binding precedent on the meaning of "participant" does not exist, and then that a § 1782 petition can be granted even when the first *Intel* factor weighs against the application. DNG Pet. at 11.

DNG's best argument on this element is that PayPal is the parent company of 3PL, and courts have differentiated between parents and affiliates in evaluating the first *Intel* factor. *See, e.g., In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020). But, here, Mulanaphy, who is a PayPal employee, is demonstrably a "participant" in the Singapore proceeding—he is to testify as a key fact witness in that proceeding. *See* Teo Decl., Ex. I. On the record presented, the evidence sought (pretrial testimony from Mulanaphy) cannot be said to be "outside the foreign tribunal's jurisdictional reach" so as to support recourse to § 1782. *Intel*, 542 U.S. at 264; *see also, e.g., In re Application of the Coalition to Protect Clifton Bay*, No. 14 Misc. 258 (DLC), 2014 WL 5454823, at *3 (S.D.N.Y. Oct. 28, 2014) (fact that target of § 1782 petition had agreed in writing to testify before foreign tribunal weighed against petition on first *Intel* factor); *Associacao dos Profissionais dos Correios v. Bank of N. Y. Melon Corp.*, No. 22 Misc. 132 (RA) (KHP), 2022

6

WL 4955312, at *6 (S.D.N.Y. Oct. 4, 2022), *appeal dismissed sub nom.*, No. 22-2865, 2023 WL

3166357 (2d Cir. Mar. 28, 2023) (where petition sought evidence from U.S. parent company of

non-U.S. participant in foreign proceeding, first *Intel* factor weighed against granting, as the

discovery sought was largely available from participants in foreign proceeding).  The first *Intel*

factor disfavors granting DNG's petition.

### 2.  Receptivity of Singapore to U.S. Courts' Involvement

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the

proceedings underway abroad, and the receptivity of the foreign government or the court or

agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  The Second

Circuit has instructed district courts to "consider only authoritative proof that a foreign tribunal

would reject evidence obtained with the aid of section 1782," including, for example, "a forum

country's judicial, executive, or legislative declarations that specifically address the use of

evidence gathered under foreign procedures." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095,

1099–100 (2d Cir. 1995).

This factor is neutral.  DNG is correct that there is no authoritative proof that the

Singapore High Court would outright reject deposition testimony from Mulanaphy if offered at

trial.  But DNG, in addressing this factor, disclaims any plan to seek to offer a deposition of

Mulanaphy into evidence in the Singapore proceeding.  *See* Reply at 6 n.6.  And DNG does not

concretely address Singapore's receptiveness to its intended "use" of the deposition, which is to

enhance DNG's pretrial understanding of its adversary's position.

### 3.  End-Run Around Singapore Discovery Procedure

The third *Intel* factor weighs against DNG's application.  It asks "whether the § 1782(a)

request conceals an attempt to circumvent foreign proof-gathering limits or other polices of a

foreign country of the United States." *Intel*, 542 U.S. at 245. Although § 1782 does not contain a "foreign-discoverability requirement," *Mees*, 793 F.3d at 303, the Second Circuit has found significant the "difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019).

Here, as PayPal has established and DNG has not refuted, the Singapore High Court has its own distinct procedure for securing a foreign deposition. That procedure does not entitle a party to such a deposition as a matter of right; instead, these are permitted upon a showing that the deposition is necessary "as a matter of justice." Teo Decl., Ex. I. Thus, although Singapore does not appear to prohibit outrightly depositions of this kind, it imposes a standard governing when such depositions are permitted. DNG's bid to take Mulanaphy's deposition under § 1782, which does not embed an analogous standard, is fairly seen as an end-run around the Singapore High Court's procedure, which DNG has not attempted to satisfy. *See, e.g.*, *Aventis Pharma v. Wyeth*, No. 19 Misc. 70 (DAB), 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (attempt to obtain through § 1782 what could have been sought in foreign tribunal under a different procedural standard constituted end-run around those same procedural requirements); *Kiobel*, 895 F.3d at 245 (third *Intel* factor weighed against § 1782 relief where it appeared that petitioner sought to circumvent Netherlands' more restrictive discovery practices). It is especially fair to put weight on this standard here, in that both parties to the Singapore litigation are sophisticated entities who agreed to a forum-selection clause designating the Singapore courts as the site of

any litigation. *See, e.g.*, *Aventis Pharma*, 2009 WL 3754191, at *1; *In re Alghanim*, No. 21 Misc. 167 (LTS), 2022 WL 1423088, at *4 (S.D.N.Y. May 5, 2022) (collecting cases).

Relevant too to this factor, DNG has already received, in writing, the direct testimony of Mulanaphy's that 3PL will offer at trial. *See* Dkt. 19. With DNG's having foregone the recourse provided by Singaporean law to try to obtain his pretrial disposition, DNG's request via § 1782 to take a U.S.-style deposition of him in the United States to enhance its fund of information presents as a dubious attempt to get a "second bite at the apple." *See, e.g.*, *In re Escallon*, 323 F. Supp. 3d at 560 (third *Intel* factor weighed against petition when deposition sought through § 1782 was of individual who had already provided testimony in the foreign proceeding). In this regard, it is notable, too, that DNG first made this application close to trial, in November 2023, with the trial set to begin in February 2024. Depending on how events play out, a U.S. deposition of Mulanaphy taken on trial's eve, far from supplying the "efficient means of assistance to the foreign proceedings" that is the goal of § 1782, would have potential to inject new and destabilizing issues that could delay or complicate the trial. *See, e.g.*, *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 351 (S.D.N.Y. 2019), *aff'd sub nom.* 400 F. Supp. 3d 62 (S.D.N.Y. 2019) ("While delay is not specifically listed as an Intel factor, the Second Circuit has made clear that a request for assistance under section 1782 that is 'inexcusably untimely' would not provide an 'efficient means of assistance to the foreign proceedings,' which is one of the twin aims of the statute." (quoting *Nascimento v. Faria*, 600 F. App'x 811, 812 (2d Cir. 2015) (summary order)).

For these reasons, the Court finds the third *Intel* factor to weigh meaningfully against DNG's petition.

### 4. Unduly Intrusive or Burdensome

The fourth and final *Intel* factor inquires "whether the discovery sought is overbroad or unduly burdensome," applying "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. That factor is either neutral or weighs lightly against granting the § 1782 petition.

To be sure, DNG requests only a single ordinary-length deposition of Mulanaphy. And Mulanaphy's account is presumptively relevant to the Singapore trial insofar as he is slated to testify as a 3PL witness. At the same time, DNG is already assured of the opportunity to take his trial testimony. And it forewent the opportunity under Singapore law to seek to justify taking, on an orderly schedule, his pretrial deposition. In this context, there is a needlessly burdensome quality to DNG's 11th-hour bid via § 1782 to depose Mulanaphy following its receipt of his trial testimony. *See, e.g.*, *Ying Kuang v. Genzyme Genetics Corp.*, No. 11 Civ. 06346 (AJN), 2012 WL 13059497, at *2 (S.D.N.Y. Nov. 28, 2012) (declining to allow belated attempts to depose witnesses); *U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 317–18 (S.D.N.Y. 2021) (delayed attempts to schedule deposition weighed against finding under Rule 26(b)(1) that such discovery was "proportionate to the needs of the case").

\*\*\*

The Court thus finds that none of the *Intel* factors favor the petition and several weigh against it. Were the statutory factors met, the Court therefore would nonetheless exercise its discretion to deny the § 1782 petition.

## CONCLUSION

For the foregoing reasons, the Court denies DNG's petition. The Clerk of Court is respectfully directed to terminate the petition pending at Docket 1 and to close this case.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: January 11, 2024
       New York, New York